IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TERRY BIRMINGHAM, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:16-CV-965-ODS |
| ) | |
| RONDA J. PASH, Warden, ) | |
| Crossroads Correctional Center, ) | |
| ) | |
| Respondent. ) | |

<u>ORDER AND OPINION (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS,
(2) DENYING ISSUANCE OF CERTIFICATE OF APPEALABILITY,
AND (3) DISMISSING MATTER WITH PREJUDICE</u>

Pending is Petitioner Terry Birmingham's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Doc. #1. The Court denies the Petition, and declines to issue a Certificate of Appealability.

I.  BACKGROUND

The underlying facts were summarized by the Missouri Court of Appeals:

> In December 1999, Thomas Brown noticed a man on the porch of a nearby house, fidgeting with the door. Brown watched the man walk off the porch and onto the sidewalk, but did not see the front of the man. As the man was walking away from him, Brown saw an elderly woman come onto the same porch and heard her scream, "Stop him, stop him, he just raped me[!]" Brown was too far way to see the woman's face. The man began running quickly down the street, so Brown yelled at his daughter, Heather Zapata, to call 911.
>
> Zapata dialed 911 as she hurried to her neighbor's aid. Zapata saw that the victim had been beaten, her mouth was bloody, and she was hysterical. The eighty-one-year-old victim screamed at Zapata, asking if the man had been apprehended and stating that she had been raped repeatedly. After Zapata calmed the victim, Zapata served as a conduit between the 911 operator and the victim, relaying the victim's age, location, name, and what had happened to her.

The police arrived minutes later. Detective David Albers, while interviewing the victim in her house, noticed that she had swelling and redness to her face and that her lip was bleeding. The victim was crying and shaking as she told Detective Albers what had happened. Thereafter, the paramedics arrived, and the victim told paramedic Kent Jeffries what had happened to her.

While at the hospital, the victim told the treating physician that she had been raped and beaten. A nurse collected a rape kit, which included two vaginal swabs. The nurse also physically examined the victim. The victim had bruising on her face, neck, hand, and knees and injuries to her vaginal area that were consistent with trauma. When a detective visited the victim at the hospital to obtain more details about the assailant, the victim was withdrawn and provided no additional information. Another detective visited some days later, but the victim still provided no assistance for identifying the assailant. A suspect sketch could not be created with the limited information provided to the police.

Examination of the rape kit revealed sperm cells on one of the vaginal swabs. Lisa Dowler, a lab technician, conducted DNA testing on the swab; she concluded that the swab contained the victim's genetic profile and the genetic profile of an unknown male. The unknown male's profile was placed in the DNA database in 2000. Thereafter, the victim was notified that the case had been inactivated (closed) because there were no leads.

In February 2007, the DNA database linked Birmingham to the unknown male profile. In July 2007, the police interviewed Birmingham, informing him that he was a suspect in an unsolved crime that occurred in December 1999. After seeing the picture of the victim's house but before the detective told him about the specifics of the unsolved crime, Birmingham denied hurting an "old lady." A buccal (inside cheek) swab was taken from Mr. Birmingham at the conclusion of the interview.

In August 2007, DNA testing was performed on Birmingham's swab. The results matched the 2000 genetic profile of the unknown male. Thereafter, Birmingham was charged with first-degree burglary, first-degree assault, second-degree robbery, and three counts of forcible rape.[1]

Before trial, counsel requested, and was granted, permission to independently test the same vaginal swab tested by the technician at Dowler's lab. When making arrangements to have the swab transferred to

---

[1] At a jury trial, the above facts were adduced from several witnesses but not the victim. The victim had gone missing in 2004 and could not be located.

> the defense expert, trial counsel was advised that the vaginal swab he
> requested had been completely consumed in the initial testing.
> Consequently, counsel was offered the second swab for independent
> testing purposes. Counsel accepted the offer to test the second swab, but
> the second swab did not contain any semen or epithelial cells. During
> trial, when counsel cross-examined Dowler, counsel learned for the first
> time that, although the first swab had been consumed, the DNA extracted
> from it was still available for retesting. Counsel then sought a mistrial and
> a continuance. The trial court denied both, noting that:
>
>> swab 2 was provided to the defense with all the other data,
>> reports, and information regarding the testing of swab 1; that
>> defense provided that data testing, graphs, reports, etc.,
>> regarding swab 1 to its expert, as well as the actual swab
>> No. 2; and that after consulting with its expert obviously felt
>> there was nothing that was going to be gained by calling that
>> expert as a witness with respect to the data reviewed on
>> swab 1, nor on doing further testing regarding swab 2.
>
> The jury found Birmingham not guilty of one count of forcible rape
> and second-degree robbery but guilty of one count of forcible rape, first-
> degree burglary, and first-degree assault.[2] The trial court sentenced Mr.
> Birmingham to life imprisonment for forcible rape and thirty years each for
> the burglary and assault convictions. The thirty-year terms were ordered
> to run concurrent to each other but consecutive to the life sentence.

Doc. #7-11, at 2-4. Petitioner appealed his conviction to the Missouri Court of Appeals, and his conviction was affirmed. Doc. #7-5; *Birmingham v. Mo.*, 471 S.W.3d 398 (Mo. Ct. App. 2015).[3]

Petitioner sought post-conviction relief under Missouri Supreme Court Rule 29.15. Doc. #7-6, at 9-50, and Doc. #7-7, at 1-16. Appointed counsel filed an amended motion alleging, among other things, trial counsel was ineffective for (1) failing to request independent testing of the first vaginal swab and DNA obtained from it, and (2) failing to seek suppression of Birmingham's statements to an investigative detective. Doc. #7-8, at 4-83. A hearing was held on Petitioner's motion. Doc. #7-12. Thereafter, Petitioner's motion was denied. Doc. #7-8, at 86-94. Petitioner appealed the court's

---

[2] The third rape count was dismissed before trial.
[3] On appeal, Petitioner argued (1) the trial court erred in denying his request for a mistrial, denying his motion to strike, and overruling his objections to hearsay testimony concerning DNA testing; and (2) the trial court erred in overruling his objections to the hearsay testimonies of three witnesses. Doc. #7-2; Doc. #7-5.

decision to the Missouri Court of Appeals, which affirmed the decision. Doc. #7-8, at 96; Doc. #7-11.

Petitioner articulates seven bases for his Petition in this Court: (1) trial counsel provided ineffective assistance of counsel for failing to call an alibi witness; (2) trial counsel, appellate counsel, and post-conviction relief counsel provided ineffective assistance of counsel for failing to conduct independent expert DNA testing on the victim's swimsuit; (3) appellate counsel provided ineffective assistance of counsel when he failed to argue on direct appeal that the trial court erred in not granting a continuance of the trial date; (4) trial counsel provided ineffective assistance of counsel for failing to request that the trial court enter an order for independent testing of DNA extracted and still available for testing; (5) appellate counsel provided ineffective assistance of counsel for failing to argue on direct appeal that the trial court erred in overruling Petitioner's motion for mistrial; (6) trial counsel provided ineffective assistance of counsel when he failed to file a motion to suppress and request an evidentiary hearing pertaining to Petitioner's statements to a detective in July 2007; and (7) appellate counsel and post-conviction relief counsel provided ineffective assistance of counsel when they failed to raise the court's denial of trial counsel's motion to withdraw. Doc. #1, at 13-37.

## II. DISCUSSION

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which amended 28 U.S.C. § 2254, a writ of habeas corpus shall not be issued on a claim litigated on the merits in state court unless the state court's decision either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The "contrary to" and "unreasonable application" provisions in the first subsection have independent meaning. The "contrary to" provision applies "if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or reached a decision contrary to Supreme Court precedent when

4

confronting facts that were materially indistinguishable." *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011). The "unreasonable application" clause applies "if the state court correctly identified the governing legal principle, but unreasonably applied it to the facts of the particular case." *Id.*

Section 2254(d) "limits the applicability of the AEDPA's deferential standard to claims that have been 'adjudicated on the merits' in state court." *Worthington v. Roper*, 631 F.3d 487, 495 (8th Cir. 2011) (citation omitted). Federal courts are "directed to undertake only a limited and deferential review of underlying state court decisions." *Id.* (quoting *Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007)). "A federal court may not issue the writ simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* (internal quotations and citations omitted).

All of Petitioner's claims assert ineffectiveness on the part of counsel. Issues of ineffectiveness of trial counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "This standard requires [the applicant] to show that his 'trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense.'" *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir. 1995) (quoting *Lawrence v. Armontrout*, 961 F.2d 113, 115 (8th Cir. 1992)). This analysis contains two components: a performance prong and a prejudice prong.

> Under the performance prong, the court must apply an objective standard and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," *Strickland*, 466 U.S. at 690, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. *Id.* at 689. Assuming the performance was deficient, the prejudice prong "requires proof 'that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lawrence*, 961 F.2d at 115 (quoting *Strickland*, 466 U.S. at 694).

*Id.* Failure to satisfy both prongs is fatal to the claim. *Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997) (stating there is no need to "reach the performance prong if we determine that the defendant suffered no prejudice from the alleged ineffectiveness");

5

*see also DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). "An ineffective assistance of counsel claim is a mixed question of law and fact." *McReynolds v. Kemna*, 208 F.3d 721, 723 (8th Cir. 2000). The Court concludes a hearing is not necessary because Petitioner's claims can be evaluated based on the Record that has been developed.

### A. <u>Failure to Present Purported Alibi Witness</u>

Petitioner argues trial counsel was ineffective because he failed to "endorse, subpoena, and call" Sabrina Buffington who would have served as an alibi witness. Doc. #1, at 13-14; Doc. #13, at 3-7. Respondent contends this ground for relief is procedurally defaulted because Petitioner did not raise this claim before any state or federal court. Doc. #7, at 7. Petitioner admits this issue was never raised but contends the failure to preserve was due to ineffective assistance of appellate and post-conviction counsel. Doc. #1, at 16; Doc. #13, at 7-10. Judicial economy permits this Court to address the Petition's merits and avoid the process of resolving any procedural issues. *See Burkhalter v. United States*, 203 F.3d 1096, 1087 (8th Cir. 2000). The Court's election to reach the merits should not be construed as a holding that any of Petitioner's claims are not procedurally defaulted.

Petitioner contends his current counsel's professional investigator interviewed Buffington in August 2016, and at that time, Buffington stated she was with Petitioner on December 24, 1999, from approximately 5:00 p.m. to 9:30 p.m. Doc. #1, at 13-14. Buffington states she was available to testify at trial but was never contacted by Petitioner's trial counsel. *Id.* at 14-15. According to Petitioner's counsel, Buffington would have testified about Petitioner's whereabouts that evening, what he was wearing that evening, and his appearance upon return to their residence later that evening. *Id.* Petitioner makes the unsubstantiated claim that three of his siblings provided information about Buffington to Petitioner's trial counsel. *Id.* at 15-16; Doc. #13, at 4.

Here, there is no evidence establishing Petitioner's investigation into a potential alibi witness was deficient or was told about Buffington's existence. Tellingly, Petitioner spoke at length prior to the commencement of his trial, complaining about his trial counsel. Doc. #7-1, at 50-56. And the trial judge explicitly invited Petitioner to make a

6

Case 4:16-cv-00965-ODS   Document 14   Filed 04/03/17   Page 6 of 14

record of the manner in which his trial counsel tried the case. *Id.* at 56 (stating "if you have any records that you want to make or comments that you want to make regarding counsel or the way the case is being tried, I'll certainly give you every opportunity to do that."). But at no point did Petitioner state his attorney failed to call an alibi witness. Likewise, in his lengthy *pro se* post-conviction motion, Petitioner did not state there was an alibi witness, or his trial counsel failed to call an alibi witness. Doc. #7-8, at 26-78.

And even if Petitioner's trial counsel was aware of Buffington's existence, Petitioner has failed to establish trial counsel's investigation of this matter was "so deficient as to fall below an objective standard of reasonable competence. *Nave*, 62 F.3d at 1035 (citing *Strickland*, 466 U.S. at 690). There are a variety of circumstances facing counsel during trial, and a court's "hindsight is discounted by pegging adequacy to counsel's perspective at the time investigative decisions are made, and by giving a heavy measure of deference to counsel's judgment." *Worthington*, 631 F.3d at 498; *see also Middleton v. Roper*, 455 F.3d 838, 846 (8th Cir. 2006) (citation omitted) (stating "[j]udicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment."). Here, Petitioner has failed to establish the performance prong. Moreover, Petitioner has not established a reasonable probability that, but for counsel's failure to investigate and call Buffington, the result of the proceeding in this matter would have been different. For these reasons, this claim is denied.

### B. <u>Failure to Conduct Independent Expert DNA Testing</u>

Petitioner claims trial counsel, appellate counsel, and post-conviction relief counsel provided ineffective assistance of counsel for failing to conduct independent expert DNA testing of the semen found on the victim's swimsuit. Doc. #1, at 17-19; Doc. #13, at 10-11. Respondent argues this claim is procedurally defaulted because it was not raised on appeal or in post-conviction proceedings. Doc. # 7, at 12-13. Petitioner concedes this issue was not raised on direct appeal or post-conviction proceeding but only because of ineffective assistance of appellate and post-conviction relief counsel. Doc. #1, at 19. As with the first claim, the Court will consider the merits of the claim.

Petitioner contends an independent DNA analysis should have been conducted on the victim's swimsuit, and utilizing the most up-to-date DNA tests, it "would have provided a more reliable, accurate result." Doc. #1, at 18. During trial, Linda Netzel, employed by the Kansas City Police Department Crime Laboratory, testified about her examination of the victim's swimsuit. Doc. #7-1, at 173-75. Netzel conducted an acid phosphatase test on the swimsuit crotch and a prostate specific antigen test, both of which were positive for semen. *Id.* at 174, 180. Netzel forwarded a portion of the swimsuit, along with the vaginal swabs, for DNA testing. *Id.* at 176.

On the swimsuit, an "RFLP DNA" test was performed, but the lab was unable to obtain results using the test. *Id.* at 176, 180-81. Although other technology was available, the swimsuit was not further tested. *Id.* at 176, 181.[4] Defense counsel asked Netzel about testing for DNA from the swimsuit crouch versus the vaginal swab. *Id.* at 182. Netzel testified the "more probative sample" for DNA purposes would be the vaginal swabs, not the swimsuit, because the sample was obtained from the body cavity of the victim. *Id.*

Lisa Dowler, also employed by the Kansas City Police Department Crime Laboratory, testified she did not perform the STR-PCR test on the swimsuit because a profile had been obtained from the most intimate sample, the vaginal swab. Doc. #7-1, at 189-90. The DNA profile resulted in a match with Petitioner's DNA, and the rarity of that particular DNA profile was "1 in 800 quadrillion" people. *Id.* at 191. As she explained to defense counsel during cross-examination, if a profile had not been obtained from the vaginal swab, a sample would have been taken from the swimsuit. *Id.* at 190. Because a profile was obtained, Dowler chose not to test the swimsuit again. *Id.* at 211-12.

Trial counsel testified during the post-conviction hearing that he was provided the opportunity to test alternate sources of DNA. Doc. #7-12, at 53-54. He chose not to

---

[4] RFLP and STR-PCR are different types of DNA tests. Doc. #7-1, at 186. RFLP is "a different technology that's an older technology that's pretty much gone away at this point in time. There's still some applications for it. But the type of DNA testing that we use today is much more sensitive. We can get a DNA profile from a smaller sample and we can get more DNA information in a shorter time period from the testing that we do now." *Id.*

8

retest alternate sources of DNA because results from the retests could not directly disprove the crime lab's results. *Id.* at 53. He chose not to retest the DNA extracts because the results would have duplicated the State's results. *Id.* at 54-55.

Petitioner speculates independent testing "could have provided exculpatory evidence, which ultimately, would have exonerated" him. Doc. #13, at 18. Petitioner fails to address the evidence that was admitted at trial – to wit, the DNA profile obtained from the vaginal swab matched Petitioner's DNA profile, and the rarity of that profile was 1 in 800 quadrillion people. Petitioner also ignores the fact that independent test could have introduced new evidence of Petitioner's guilt and further bolster the State's case. Regardless, Petitioner has failed to establish his trial counsel's performance was deficient, and he has failed to establish a reasonable probability that, but for counsel's failure, the result of the proceeding would have been different. Accordingly, this claim is denied.

### C. Failure to Argue the Trial Court Erred in Not Granting A Continuance

Petitioner contends his appellate counsel was ineffective by failing to argue on direct appeal that the trial court erred in denying a request for a continuance of the trial after the State disclosed 151 pages of discovery five days before trial. Doc. #1, at 20-1. Petitioner alleges this particular issue was not raised on direct appeal or post-conviction appeal due to ineffective assistance of appellate counsel. Doc. #1, at 22-23. The Court will again address the merits.

On the morning of trial, counsel sought a continuance. The trial court denied defense counsel's request. Doc. #7-1, at 54. The trial court noted the State provided a report on the recertification of the Kansas City Regional Crime Lab. *Id.* at 54-55. The trial court found the report was not discovery, and defense counsel had adequate time to review the certification report and talk to an expert. *Id.* at 55. The trial court also stated defense counsel would have the opportunity to cross-examine those witnesses. *Id.*

During trial, defense counsel cross-examined Dowler about the audit of the crime lab. Doc. #7-1, at 194-97. He specifically asked about the auditors' concerns with the lab failing to seal an outer envelope that contained a sealed glassine envelope

9

containing the trace evidence.  *Id.*  Defense counsel even referred to the audit in closing argument.  Doc. #7-1, at 238.

Once again, Petitioner has failed to establish counsel's performance was deficient.  Further, he presented no basis as to how he was prejudiced – other than his speculation that he could have hired an expert who could have compared the crime lab's practices with the industry-accepted practices.  Petitioner could have hired such an expert, regardless of whether he received the audit paperwork.  As such, there is no showing of prejudice, and this claim is also denied.

### D.  Failure to Request the Trial Court Enter an Order for Independent Testing

Petitioner argues trial counsel was ineffective for failing to request the trial court order independent testing by defense, not only of the vaginal swab but of DNA that had been extracted from the vaginal swab.  Doc. #1, at 24-25.  This issue was presented to the Missouri Court of Appeals.  The Missouri Court of Appeals noted "trial counsel *did* request independent testing of both swabs, and he had his DNA expert examine and evaluate all of the lab technician's notes regarding the DNA analysis performed."  Doc. #7-11, at 7 (emphasis in original).  "[W]hat [trial counsel] failed to do was request independent examination specifically of the DNA obtained from the first swab."  *Id.*  The Court of Appeals noted trial counsel's failure was "apparently due to [his] misunderstanding of the distinction between testing the swab, itself, and testing the DNA obtained from the swab."  *Id.*  The Court of Appeals concluded Petitioner did not demonstrate prejudice from counsel's alleged error because he still has not conducted independent testing on the DNA (or failed to present such evidence at the hearing), and there was no basis for determining the results would be any different from the State's results.  *Id.* at 8.

This Court must determine whether the decision of the Missouri Court of Appeals is either contrary to or involved an unreasonable application of clearly established law, or was "based on" an unreasonable determination of fact.  28 U.S.C. § 2254(d).  The Court concludes the Missouri Court of Appeals applied the proper standard.  That is, the Missouri Court of Appeals analyzed whether (1) trial counsel's performance was deficient, and (2) this deficiency prejudiced Petitioner.  Doc. #7-11, at 5-6 (quoting

10

*Strickland*, 466 U.S. at 687-94). Further, the Court concludes that the decision of the Missouri Court of Appeals was not based on an unreasonable determination of fact. This claim is denied.

### E. Failure to Argue the Trial Court Erred in Overruling Motion for Mistrial

Petitioner maintains appellate counsel provided ineffective assistance of counsel by failing to argue on direct appeal the trial court erred in overruling Petitioner's motion for mistrial after Petitioner's trial counsel learned through cross-examination of the State's witness that extracted DNA still existed and was available for retesting. Doc. #1, at 28-29. Petitioner concedes this issue was not exhausted on appeal or in post-conviction proceeding but argues said failure was due to ineffective assistance of appellate and post-conviction relief counsel. Doc. #1, at 19. As with his first three claims, the Court will consider the merits of the claim.

During trial, counsel requested a mistrial when one of the State's witnesses testified DNA was available for retesting. Doc. #7-1, at 198-203. Prior to trial, counsel had requested a test of genetic information – specifically, one of the vaginal swabs – but was told the genetic material was consumed during testing. When told this information, counsel inferred there was no more DNA available test. But he was informed during trial there was DNA that could be retested. The Court denied the motion for mistrial. *Id.* at 204.

As with his second claim, Petitioner speculates testing of the DNA could have resulted in "possible exculpatory evidence." Doc. #1, at 29. Petitioner fails to address the DNA evidence admitted at trial, which matched his DNA profile. He also ignores that retesting the same DNA extract would have culminated, in all likelihood, in the same result obtained by the State. Petitioner fails to establish his appellate counsel's performance was deficient, and appellate counsel's decision not to raise this issue on appeal resulted in prejudice. Accordingly, this claim is denied.

### F. Failure to File Motion to Suppress

Petitioner also argues trial counsel was ineffective by failing to file a motion to suppress Petitioner's statements on July 11, 2007, during an interview with Detective

11

Case 4:16-cv-00965-ODS   Document 14   Filed 04/03/17   Page 11 of 14

Gary Snyder. Doc. #1, at 31-33. This issue was addressed by the Missouri Court of Appeals.

The Missouri Court of Appeals noted Petitioner testified at the evidentiary hearing that when he met with Detective Snyder "he was in both leg restraints and handcuffs" and was told detectives wanted to see him. Doc. #7-11, at 9. Petitioner testified he had no intention of speaking to the detectives and he was "basically forced to talk to them." *Id*. Petitioner claimed at the evidentiary hearing that he asked the detectives if he needed an attorney, but was assured by the detectives they would get to that later. *Id*. Petitioner testified he was not read his *Miranda* warnings, and the detectives used intimidation tactics. *Id*. Petitioner claimed he provided this information to his trial counsel, and asked his trial counsel to file a motion to suppress. *Id*. Trial counsel refused to file a motion to suppress. *Id*. Petitioner argued this was ineffective assistance of counsel.

The Missouri Court of Appeals stated "[t]rial counsel…considered filing a motion to suppress but ultimately chose not do so" because counsel did not see "any realistic grounds for a motion to suppress based upon the information I had gotten from [Petitioner] and reading Detective Snyder's report." Doc. #7-11, at 8. Trial counsel noted a motion to suppress would not have been successful unless the trial court accepted Petitioner's testimony over the detective's testimony about what transpired during the interview. *Id*. The Court of Appeals concluded Petitioner "was not prejudiced by counsel's decision not to seek suppression based upon counsel's assessment that a motion was not supportable." *Id*. at 10. The Court of Appeals also found Petitioner "failed to demonstrate that, even if his statements were suppressed, the results of his trial would have been different in light of the remaining evidence of his guilt." *Id.*

As before, this Court must determine whether the decision of the Missouri Court of Appeals is either contrary to or involved an unreasonable application of clearly established law, or was "based on" an unreasonable determination of fact. 28 U.S.C. § 2254(d). Based upon its review of the Record and applicable law, the Court concludes the Missouri Court of Appeals applied the proper standard. That is, the Missouri Court of Appeals analyzed whether (1) trial counsel's performance was deficient, and (2) the deficiency prejudiced Petitioner. Doc. #7-11, at 5-6, 10 (quoting *Strickland*, 466 U.S. at

687-94). Further, the Court concludes that the decision of the Missouri Court of Appeals was not based on an unreasonable determination of fact. Thus, this claim is denied.

### G. Failure to Raise Motion to Withdraw as Attorney

Petitioner contends appellate counsel and post-conviction relief counsel provided ineffective assistance of counsel when they failed to argue the trial court erred in denying counsel's motion to withdraw on the morning of trial. Doc. #1, at 34-35. Respondent points out that Petitioner failed to raise this issue on appeal or during his post-conviction proceeding in state court, and therefore, this claim is procedurally defaulted. Doc. #7, at 28. Again, the Court will bypass the question of exhaustion and address the merits of this claim.

On the morning of trial, Petitioner's counsel sought to withdraw as counsel. Doc. #7-1, at 49-54. Both Petitioner and his counsel presented argument as to why Petitioner's trial counsel should be permitted to withdraw. *Id.* Upon consideration of these arguments, the court found defense counsel had "diligently prepared the case," "very aggressively pursued the defense," and had "a lot of the evidence in this case suppressed." *Id.* at 54. The court also noted defense counsel had hired a DNA expert and obtained a dismissal of another matter filed against Petitioner. *Id.* Finally, the court stated there were no complaints about trial counsel until the morning of trial, there was no breakdown or irreconcilable conflict, and discharging defense counsel on the eve of trial for insubstantial reasons was inappropriate. *Id.* As with his other claims, Petitioner has failed to show his appellate and post-conviction relief counsel were deficient in failing to raise this issue on appeal or during post-conviction proceedings. In addition, Petitioner has failed to establish prejudice. Significantly, he has not shown the results of those proceedings would have been different had this particular issue been raised. Accordingly, this claim is also dismissed.

### III. CERTIFICATE OF APPEALABILITY

The Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c).

13

To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004). Because Petitioner has not met this standard, a certificate of appealability will be denied. *See* 28 U.S.C. § 2254, Rule 11(a).

## IV. CONCLUSION

For these reasons, Petitioner's request for habeas corpus relief pursuant to 28 U.S.C. § 2254 is denied, the issuance of a certificate of appealability is denied, and this matter is dismissed with prejudice.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: April 3, 2017    UNITED STATES DISTRICT COURT